# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| **IN RE: JENNIFER L. KENNEY,** | **Case No. 06-71975-A** |
| | **Chapter 13** |
| **Debtor,** | |

_____

| | |
|---|---|
| **IN RE:  DAVID M. BYRUM,**[1] | **Case No. 07-70359-A** |
| | **Chapter 13** |
| **Debtor.** | |

_____

## MEMORANDUM OPINION AND ORDER DENYING OBJECTIONS TO CONFIRMATION
_____

These matters are before the Court on two creditors' Objections to Confirmation of each of the debtors', Jennifer L. Kenney ("Kenney") and David M. Byrum ("Byrum") (collectively known as "Debtors") Chapter 13 Plans.  The issue in both cases is identical and is purely one of law; specifically, does the "hanging paragraph"[2] amended to § 1325 in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") allow the Debtors to surrender their vehicles to the Creditors, Tidewater Finance Company ("TFC") and Hyundai Motor Finance Company ("HMFC") (collectively known as "Creditors"), in full satisfaction of the amounts owed to the Creditors' even

_____

[1] At the hearing on the Objection to Confirmation to Byrum's Chapter 13 Plan, counsel for both the creditor and the debtor waived the right to make their own oral arguments, adopting and relying instead on the arguments of the creditor and debtor in Kenney's case.  Throughout this Memorandum Opinion the Court refers to the arguments of the creditors and debtors based on that adoption and reliance.
[2] The "hanging paragraph" is so termed because it is a free-standing unnumbered paragraph inserted between 11 U.S.C. 1325(a)(9) and 1325(b)(1). 11 U.S.C. § 1325(a) (2006).  This Court will use that term throughout this Memorandum Opinion to refer to this Bankruptcy Code section.

though the Debtors owe more money than the vehicles are worth.  The Court must determine whether the hanging paragraph applies to all three subsections of § 1325(a)(5) of the Bankruptcy Code ("Code"), including surrender as suggested by the Debtors, which would deprive the Creditors of any deficiency claims after the sales of the vehicles, or, as the Creditors argue, whether the hanging paragraph only prevents bifurcation of a "910 claim"[3] when a debtor retains a vehicle, thus allowing the Creditors their deficiency claims.  This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FINDINGS OF FACT

The pertinent facts in these cases are not in dispute and are virtually identical.

Debtor Kenney purchased a 2003 Chevrolet Impala on September 29, 2006, for her personal use and financed that purchase through Calvary Cars and Service, which later assigned its note to TFC.  She filed her bankruptcy petition on December 19, 2006, less than 910 days after purchasing the vehicle, and filed her Amended Plan on February 1, 2007, in which she stated that she was surrendering the vehicle in full satisfaction of TFC's claim.  On March 6, 2007, TFC filed the instant Objection to Confirmation to the Amended Plan.[4]  On April 12, 2007, TFC filed its original Proof of

---

[3] A "910 claim" is a term that has developed in bankruptcy practice to refer to debts that were incurred within the 910 days preceding the filing of the bankruptcy petition.  The hanging paragraph specifically excepts 910 claims from bifurcation if it was incurred for vehicles acquired for the personal use of the debtor.  *See* discussion *infra* pp. 8-10.

[4] The creditor initially objected to confirmation of the plan on non-feasibility grounds as well, but that objection was orally withdrawn at the hearing for oral arguments.  Therefore, we are only proceeding on the objection to surrender in full satisfaction of the creditor's claim.

Claim listing the total amount of secured debt as $12,341.84, but on April 19, 2007, it amended that claim to change the status of the debt to unsecured and show the total amount of debt reduced to $5,271.34.[5]

Similarly, Debtor Byrum purchased a 2005 Kia Sedona on March 22, 2005, for his personal use and financed that purchase through HMFC.  He filed his bankruptcy petition on February 22, 2007, less than 910 days after purchasing the vehicle, and filed his Plan on March 8, 2007, in which he stated that he was surrendering the vehicle in full satisfaction of HMFC's claim.  On March 9, 2007, HMFC filed an original Proof of Claim listing the total amount of the secured claim as $20,755.61.  HMFC then filed its instant Objection to Confirmation on April 13, 2007, based on the treatment of its claim under the plan. [6]

## ARGUMENTS

The Creditors arguments against applying the hanging paragraph to § 1325(a)(5)(C) are numerous.  First, they argue that the hanging paragraph is ambiguous and/or produces anomalous results that require the Court to look past its plain language to Congress' intent in order to decipher its meaning.  They argue that even though the hanging paragraph says it applies to § 1325(a)(5) that the Court should not read it in a vacuum, but instead give effect to the intent of Congress which was to elevate the rights of secured "910" creditors.  The Creditors contend that applying the hanging paragraph to the surrendered collateral and allowing the

---

[5] This amended Proof of Claim represents the deficiency amount due under the sales contract after TFC sold the surrendered vehicle.

[6] The Court notes that HMFC also filed a Motion for Relief from Stay as to the Kia Sedona on March 21, 2007, which was granted without objection by the debtor at a hearing held on April 17, 2007.

surrender of the vehicles in full satisfaction of the claims when the value of the surrendered collateral would not fully satisfy the outstanding liens, would be contrary to that intent.   They cite the legislative history as evidence that Congress only meant to heighten secured creditors' protection and as such could not have possibly meant to change recourse debt into non-recourse debt.

The Creditors also argue that reading the hanging paragraph to apply to surrendered collateral will lead to anomalous results by allowing arbitrary treatment of deficiency claims.  They argue that if a 910 creditor, whose claim is treated as unsecured in the plan, obtains relief, repossesses and sells the vehicle before confirmation of the plan, then that creditor has an unsecured deficiency claim. However, if that same creditor does not obtain relief promptly it may be forced to take possession of the vehicle in full satisfaction of its claim.  The creditors argue that this is a windfall to the debtor, which the Supreme Court prohibited in *Butner v. U.S.*, 440 U.S. 48, 99 S. Ct. 914, 918 (1979).  They also argue that, hypothetically, such an application of the hanging paragraph would allow a debtor to surrender a vehicle that had been wrecked and declared a total loss in full satisfaction of the debt it secured.

Additionally, the Creditors argue that the debtors' position is a major change from the practice under the previous Code, which is discouraged.  *Dewsnup v. Timm*, 502 U.S. 410, 419-20, 112 S. Ct. 773, 779 (1992).

Secondly, the creditors argue that § 506 has never been used in bankruptcy to determine a deficiency claim once a vehicle has been surrendered and sold.  They argue that state law controls determination of the deficiency amount, as it always has,

by subtracting the amount that was obtained from the sale of the vehicle from the total amount due under the contract.  Thus, since § 506, pre-BAPCPA, was only used to determine the value of claims of collateral that a debtor was retaining, the addition of the hanging paragraph was only meant to affect retained collateral.  They argue that the flaw in the majority's position, which they concede is contrary to the view they urge on the Court, is that it finds § 506 defines "allowed secured claim," which the Creditors argue it does not according to *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773 (1992).

Similarly, the Creditors also argue that the hanging paragraph does not apply in the instant cases because § 506 only deals with collateral in which the bankruptcy estate has an interest.  They suggest that once the collateral has been surrendered that the estate no longer has any interest in that property.

Finally, the creditors argue that applying the hanging paragraph to surrendered collateral means that unsecured creditors of the same class would be treated differently under the plan, a violation of § 1322(b)(3).[7]  The Creditors state that they are receiving a 0% distribution on their unsecured claims while the other unsecured creditors are receiving at least some payment under the plan.

Basically, the Creditors argue that the hanging paragraph should always be read to provide heightened protection to 910 secured creditors, as that was the intent of Congress.  They also urge this Court to follow the basic reasons underlying the entire bankruptcy system, the "rehabilitation of individual debtors and equitable treatment of creditors," *In re Trejos*, 352 B.R. 249, 262 (Bankr. D. Nev. 2006), which they contend

---

[7] Section 1322(b)(3) states that "if the plan classifies claim, provide the same treatment for each claim within a particular class."  11 U.S.C. § 1322(b)(3).

can only be correctly served by not applying the hanging paragraph to surrendered collateral and allowing them their unsecured deficiency claims.

The Debtors argue that the hanging paragraph is not ambiguous; therefore, under the Plain Meaning Rule[8] the Court must apply it as it is written. They state that by its terms the hanging paragraph applies to § 1325(a)(5), which includes both (5)(B) and (5)(C) of that section. They urge this Court to follow the majority of the courts, and most specifically, *In re Osborn*, No. 06-6061WM2007 Bankr. Lexis 497 (BAP 8th Cir. Feb. 23, 2007), that have ruled on this issue and find that the hanging paragraph prevents bifurcation of 910 claims regardless of whether the debtor retains or surrenders the property.

The Debtors further contend that because the surrender of the vehicles fully satisfies the Creditors' claims, they have no unsecured claims; therefore, there is no violation of § 1322(b)(3).

## CONCLUSIONS OF LAW

I. Plan Confirmation

Section 1325(a)[9] of the Code delineates the requirements for confirmation of a Chapter 13 plan. A plan's proposed treatment of a secured claim can be confirmed if

---

[8] *See* discussion *infra*, p. 13.

[9] Section 1325(a) reads:

(a) Except as provided in subsection (b), the court shall confirm a plan if--
  (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
  (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
  (3) the plan has been proposed in good faith and not by any means forbidden by law;
  (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7

one of the following provisions is met.  First, the plan can provide that the debtor and

secured creditor agree on how the claim will be paid. *Id.* at § 1325(a)(5)(A).  Secondly,

the plan can provide that the debtor will keep the collateral securing the claim and that

the creditor retains the lien until either the debt is repaid under the plan or until the

debtor receives a discharge, which ever occurs first.  *Id.* at § 1325(a)(5)(B)(i).  If the

---

of this title  on such date;
   (5) with respect to each allowed secured claim provided for by the plan-
     (A) the holder of such claim has accepted the plan;
     (B) (i) the plan provides that--
       (I) the holder of such claim retain the lien securing such claim until the earlier
of--
        (aa) the payment of the underlying debt determined under nonbankruptcy
law; or
        (bb) discharge under section 1328; and
       (II) if the case under this chapter is dismissed or converted without completion
of the plan, such lien shall also be retained by such holder to the extent recognized by
applicable nonbankruptcy law;
      (ii) the value, as of the effective date of the plan, of property to be distributed
under the plan on account of such claim is not less than the allowed amount of such
claim; and
      (iii) if--
       (I) property to be distributed pursuant to this subsection is in the form of
periodic payments, such payments shall be in equal monthly amounts; and
       (II) the holder of the claim is secured by personal property, the amount of such
payments shall not be less than an amount sufficient to provide to the holder of such
claim adequate protection during the period of the plan; or
     (C) the debtor surrenders the property securing such claim to such holder;
   (6) the debtor will be able to make all payments under the plan and to comply with the
plan;
   (7) the action of the debtor in filing the petition was in good faith;
   (8) the debtor has paid all amounts that are required to be paid under a domestic
support obligation and that first become payable after the date of the filing of the
petition if the debtor is required by a judicial or administrative order, or by statute, to
pay such domestic support obligation; and
   (9) the debtor has filed all applicable Federal, State, and local tax returns as required
by section 1308.

For purposes of paragraph (5), section 506 shall not apply to a claim described in that
paragraph if the creditor has a purchase money security interest securing the debt that is
the subject of the claim, the debt was incurred within the 910-day preceding the date of
the filing of the petition, and the collateral for that debt consists of a motor vehicle (as
defined in section 30102 of title 49) acquired for the personal use of the debtor, or if
collateral for that debt consists of any other thing of value, if the debt was incurred
during the 1-year period preceding that filing.
11 U.S.C. § 1325(a).

debtor chooses this option, he must pay adequate protection payments to the secured

creditor, the total of which must not be less than the allowed amount of the claim as of

the effective date of the plan. *Id.* at § 1325(a)(5)(B)(ii) & (iii).  Finally, the plan can

provide that the debtor will surrender the secured collateral to the creditor holding the

lien. *Id.* at § 1325(a)(5)(C).

II.  The Hanging Paragraph

Congress amended § 1325(a) of the Code by adding an unnumbered paragraph

after § 1325(a)(9), which states:

> For purposes of paragraph (5), section 506 shall not apply to a claim
> described in that paragraph if the creditor has a purchase money security
> interest securing the debt that is the subject of the claim, the debt was
> incurred within the 910-day [sic] preceding the date of the filing of the
> petition, and the collateral for that debt consists of a motor vehicle (as
> defined in section 30102 of title 49) acquired for the personal use of the
> debtor, or if collateral for that debt consists of any other thing of value, if
> the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a).  This is what has been affectionately termed the "hanging

paragraph."  This paragraph is only applicable to purchase-money security debt for a

motor vehicle acquired for personal use by the debtor incurred within the 910 days

before the filing of the bankruptcy petition and by its own terms excludes the

application of § 506 of the Code to that type of debt. *Id.*

Section 506 of the Code determines the amount of secured claims in bankruptcy

and allows for the bifurcation of under-secured claims into secured and unsecured

portions based on the value of the collateral. 11 U.S.C § 506(a)(1) & (2).  In pertinent

part it reads:

8

(a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

*Id*.

At first blush, it would seem simple to apply the language of the hanging paragraph and exclude the application of § 506 to all 910 claims regardless of how they were treated in the plan.  That is, after all, what it says.  However, application of the statute has not proven quite so simple and numerous courts have had to address the very question we are faced with here; does the hanging paragraph apply to § 1325(a)(5)(C), thereby preventing a creditor from asserting a deficiency claim against the debtor once its surrendered secured collateral has been sold?   The answer is based on statutory interpretation, but as might be expected, not everyone is in agreement as to the outcome.

A.  The Minority Approach

A minority of courts have found that the hanging paragraph does not apply to §

1325(a)(5)(C) and therefore, the 910 creditor is entitled to file an unsecured deficiency

claim against the debtor for the balance due after sale of the surrendered vehicle.  *See*

*In re Morales*, No. 06 B 9886, 2007 Bankr. Lexis 97, (Bankr. N.D. Ill., Jan. 11, 2007), *In*

*re Hoffman*, No. 06-51510, 2006 Bankr. Lexis 3754 (Bankr. E.D. Mich., Dec. 29, 2006),

*In re Patricka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006); *Dupaco Community Credit Union*

*v. Zehrung (In re Zehrung)*,     F.Supp.2d   , 351 B.R. 675 (W.D. Wis. 2006), *In re*

*Duke*, 345 B.R. 806 (Bankr. W.D. Ky. 2006). One of these courts has found the hanging

paragraph to be ambiguous and have resorted to textualism[10] and legislative history to

---

[10] The court in *In re Trejos* explained textualism as follows:

> In contrast with their ancestors in the 'plain meaning' school of the
> late nineteenth and early twentieth centuries, modern textualists do
> not believe that it is possible to infer meaning from 'within the four
> corners' of a statute. Rather, they assert that language is intelligible
> only by virtue of a community's shared conventions for
> understanding words in context. While rejecting the idea of
> subjective legislative intent, they contend that the effective
> communication of legislative commands is in fact possible because
> one can attribute to legislators the minimum intention 'to say what
> one would be normally understood as saying,  given the
> circumstances in which one said it.' Textualists thus look for what
> they call '"objectified" intent -- the intent that a reasonable person
> would gather from the text of the law, placed alongside the
> remainder of the corpus juris.'

John F. Manning, *What Divides Textualists From Purposivists?*, 106 COLUM. L. REV. 70, 79-
80 (2006) (footnotes omitted).

A textualist approach does not mean that statutory text must be read as if the
intended reader were an unlettered schoolchild. Rather, as Professor Manning notes, a
textualist approach seeks the semantic meaning of the words, *id.* at 91-93, a fancy
designation for how to determine the meaning of a collection of words written together,
such as a statute. Determining a statute's semantic meaning requires a judge to examine
the context in which that statutory text is placed. *Cf.* Robinson v. Shell Oil Co., 519 U.S.
337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) ("The plainness or ambiguity of
statutory language is determined by reference to the language itself, the specific context in

find its answer, *see In re Duke*, 345 B.R. at 809, while another found it unfathomable

that Congress could have intended to turn recourse debt into non-recourse debt or strip

any rights from a secured creditor, *see In re Hoffman*, 2006 Bankr. Lexis 3754, at *9-

*12.  Finally, several of these courts have found that § 506 is not the basis for the

deficiency claim, either pre- or post-BAPCPA, but find rather that state law has always

granted that right and continues to do so now. *See, In re Morales*, 2007 Bankr. Lexis

97, at *11-*14, *In re Patricka*, 355 B.R. at 626, *In re Zehrung*, 351 B.R. at 678. These

reasons are some of the same arguments put forth by the Creditors herein.

## B.  The Majority Approach

The majority of courts that have dealt with this issue have decided that the

language of the hanging paragraph does apply to collateral that is surrendered to a

secured creditor pursuant to § 1325(a)(5)(C).  Therefore, § 506 does not apply to such

surrendered property and the creditor is unable to bifurcate its claim and assert a

deficiency claim against the debtor for any portion of the debt not covered by the sale

of the vehicle.  *See In re Osborn*, 2007 Bankr. Lexis 497 (B.A.P. 8th Cir. Feb. 23, 2007),

*In re Pinti*, No. 06-35230 (cgm), 2007 Bankr. Lexis 744, *17 (Bankr. S.D.N.Y, Mar. 13,

2007), *In re Moon*,      B.R.    , 2007 Bankr. LEXIS 593, 2007 WL 214409 (Bankr. N.D.

---

which that language is used, and the broader context of the statute as a whole."); Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); ("'To this end, "it is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms."'" *San Jose Christian Coll.*, 360 F.3d at 1034, *quoting* Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1231-32 (9th Cir. 2003).

*In re Trejos*, 352 B.R. at 255-56.

Ala. Jan. 26, 2007), *In re Gentry*, 2006 Bankr. LEXIS 3281, 2006 WL 3392947(Bankr.

E.D. Tenn. Nov. 22, 2006), *In re Turkowitch*, 355 B.R. 120, 2006 WL 3346156 (Bankr.

E.D. Wis. Nov. 16, 2006), *In re Feddersen*, 355 B.R. 738 2006 WL 3347919 (Bankr. S.D.

Ill. Nov. 15, 2006), *In re Maggett*, 2006, Bankr. LEXIS 2756, 2006 WL 3478991 (Bankr.

D. Neb. Oct. 19, 2006), *In re Bayless*, 2006 Bankr. LEXIS 3304, 2006 WL 2982101

(Bankr. E.D. Tenn. Oct. 18, 2006), *In re Pool*, 351 B.R. 747 (Bankr. D. Or. 2006), *In re*

*Evans*, 349 B.R. 498 (Bankr. E.D. Mich. 2006), *In re Nicely*, 349 B.R. 600 (Bankr. W.D.

Mo. 2006), *In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006), *In re Brown*, 346 B.R.

868 (Bankr. N.D. Fla. 2006), *In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006), *In re*

*Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006), *In re Long*, 2006 Bankr. LEXIS 1605,

2006 WL 2090246 (Bankr. E.D. July 12, 2006 E.D. Tenn. 2006), *appeal docketed*, No.

06-6252 (6th Cir. Sept. 27, 2006). These courts found that the language of the hanging

paragraph is unambiguous and should be applied as it is written. *See, e.g., In re*

*Osborn*, 2007 Bankr. Lexis 497, at *12-*14, *In re Pinti*, 2007 Bankr. Lexis 744, at *18-

*20.  They found that the hanging paragraph applies to § 1325(a), which includes both

collateral retained and surrendered by the debtor, and that if Congress had intended to

except surrendered collateral it could have easily done so.  *Id*.

C.  Statutory Interpretation in the Fourth Circuit

        This Court previously discussed the rules of statutory interpretation in the Fourth

Circuit in *In re Phillips*.  First, all statutory interpretation should begin and "'end with the

statute's plain language.'"  *In re Phillips*, No. 06-71604-SCS, 2007 Bankr. Lexis 791, at

*31 (citing *Hillman v. Internal Revenue Serv.*, 263 F.3d 338, 342 (4th Cir. 2001).  If the

statutory language is clear and unambiguous then "the sole function of the court is to
enforce it according to its terms." *In re Osborn*, 2007 Bankr. Lexis 497, at *14 (citing
*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed.
2d 290 (1989).  Additionally, if the language is clear it is unnecessary to attempt to
decipher the intent of Congress.  *See Harford Underwriters Ins. Co. v. Union Planters
Bankr, N.A.*, 530 U.S. 1, 13-14, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) ("It suffices
that the natural reading of the text produces the result we announce.  Achieving a
better policy outcome...is a task for Congress, not the courts.").  This is known as the
Plain Meaning Rule.

We, however, have previously noted two exceptions to this Rule:  1) if a party
can demonstrate that its application "'produce[s] a result [] at odds with the intentions
of its drafters,'" *In re Phillips*, 2007 Bankr. Lexis 791, at *31 (citing *Ron Pair*, 489 U.S.
at 242), and 2) if its application "'results in an outcome that can truly be characterized
as absurd, i.e., that is so gross as to shock the general moral or common sense.'"  *Id.*
(citing *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra)*, 361 F.3d 257, 265 (4th Cir.
2004)).  Both of these exceptions should only apply in "'exceptionally rare'"
circumstances.  *In re Ellegood*, No. 06-50579-SCS, 2007 Bankr. Lexis 578, *17-*18
(Bankr. E.D. Va., Feb. 22, 2007) (*In re Sunterra*, 361 F. 3d at 265. We now apply these
rules of statutory construction to the issues at hand.

The hanging paragraph states that "[f]or purposes of paragraph (5), section 506
shall not apply to a [910] claim." 11 U.S.C. § 1325(a).  Preliminarily, the hanging
paragraph is found in the Code directly after § 1325(a)(9), and refers to paragraph (5).

*Id.* No other code section is referenced and it has not been argued either by the

parties in these cases or in any other cases found by this Court, that the reference to

paragraph (5) does not mean § 1325(a)(5); therefore, we find that it is referencing that

section.

Section 1325(a)(5) describes the only three treatments allowed for secured

claims that are confirmable: 1) agreement between the parties regarding treatment of

the claim as found in § 1325(a)(5)(A),[11] 2) the debtor's retention of collateral with

payment as specified in § 1325(a)(5)(B), or 3) the debtor's surrender of collateral to the

creditor as described in § 1325(a)(5)(C). *Id.*   If the plan includes any one of these

treatments for each secured claim then the Code states that the Court shall confirm the

plan.[12]  *Id.*   That is not the end of the analysis because the claims must be valued for

both retention and surrender to determine other factors for confirmation such as

feasibility, good faith, etc.  Thus the application of § 506, "Determination of Secured

Status" to §§ 1325(a)(5)(B) & (C).  11 U.S.C. § 506, *see also, e.g., In re Osborn*, 2007

Bankr. Lexis 497, at *12-*13, *In re Pinti*, 2007 Bankr. Lexis 744, at *29-*31.  BAPCPA

changed this however with the addition of the hanging paragraph, which specifically

states that § 506 no longer applies to § 1325(a)(5).  11 U.S.C. § 506.  That language

could not be more clear; regardless of how the collateral for the secured claim is

treated, retention or surrender, § 506 will not be used to bifurcate it into secured and

unsecured claims as was the practice before the addition of the hanging paragraph.

---

[11] This Court is not addressing § 1325(a)(5)(A) in this Memorandum Opinion for obvious reasons.  If the debtor and creditor agree as the treatment of the claim, there is no dispute for the court to decide.
[12] Of course, the other requirements for plan confirmation found in § 1325(a) must also be met before a plan is confirmed.

None of the subparagraphs under § 1325(a)(5) are excluded in the hanging paragraph, which Congress easily could have done. The *In re Pinti* court noted that while "poorly drafted, the Hanging Paragraph is not ambiguous." *In re Pinti*, 2007 Bankr. Lexis 744, at *20. This Court agrees with *Pinti*; consequently, we find that the hanging paragraph is clear and unambiguous and that we are bound by its plain meaning. As such, bifurcation, as described in § 506, is not permitted either when the debtor retains *or surrenders* the collateral, unless one of the plain meaning exceptions applies.

1. First Exception to the Plain Meaning Rule: At Odds with the Drafters' Intent

To look beyond the plain meaning of a statute, a party must demonstrate that application of the statute is at odds with the intention of the drafters. *Ron Pair*, 489 U.S. at 242. In order to so demonstrate, a party must do more than show "that the statute's literal application is unreasonable in light of bankruptcy policy." *In re Sunterra*, 361 F.3d at 296 (citing *Ron Pair*, 489 U.S. at 242). The burden of proof is on the party asserting the argument, here, the Creditors, but they have provided no such proof. Instead, they argue that the legislative history[13] that accompanies the hanging

---

[13] The legislative history is as follows:

Protection for Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S.256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing. In addition, the bill terminates the automatic stay with respect to personal property if the debtor does not timely reaffirm the underlying obligation or redeem the property. Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase

paragraph supports their contention that Congress intended to provide additional

protections to secured creditors.

We note, as other courts have, that the legislative history consists of only one

paragraph that, in large part, simply repeats the language of the statute itself; it

provides very little, if any, insight into the intent of the drafters. *See, e.g., In re Pinti*,

2007 Bankr. Lexis 744, at *40, *In re Gentry*, 2006 Bankr. Lexis 3281, 2006 WL 3392947

at *8. "Silence in the legislative history cannot be utilized to create an ambiguity in the

statutory language." *In re Payne*, 347 B.R. at 282 (citing *Dewsnup*, 502 U.S. at 419-20

("Of course where the language [of the statute] is unambiguous, silence in the

legislative history cannot be controlling.")).

The Creditors have not pointed to any provision in the Code or any other law

that prevents applying the hanging paragraph to § 1325(a)(5)(C).  In fact the Court

notes that just the opposite is true as the Code specifically allows debtors to modify the

rights of secured lien holders like ours here pursuant to § 1322(b)(2). [14]  We find that

---

money security interest in a motor vehicle acquired for the personal use of the debtor
within 910 days preceding the filing of the petition. Where the collateral consists of any
other type of property having value, section 306(b) provides that section 506 of the
Bankruptcy Code does not apply if the debt was incurred during the one-year period
preceding the filing of the bankruptcy case.

H.R. Rep. No. 109-31(1), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 109th
Cong. (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103.
[14] Section 1322(b)(2) of the Code reads:

Subject to subsections (a) and (c) of this section, the plan may modify the rights of
holders of secured claims, other than a claim secured only by a security interest in real
property that is the debtor's principal residence, or of holders of unsecured claims, or
leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

this exception does not apply and will not prevent the plain meaning of the statute from

being enforced by this Court.

2. <u>Second Exception to the Plain Meaning Rule: Absurd Result</u>

In order for a plain meaning interpretation of a statute to be so absurd so as to

shock the conscience, it must render other provisions of the same Code section

"inoperative,...or create an irreconcilable conflict with itself or neighboring statutes." *In*

*re Ellegood*, 2007 Bankr. Lexis 578, at * 18 (citing *In re Sunterra*, 361 F.3d at 267). A

literal interpretation can be "'unreasonable,' or even 'quite unreasonable'" and still not

be absurd.  *In re Sunterra*, 361 F.3d at 268 (citing *Maryland State Dep't of Educ. v. U.S.*

*Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996)). "'[I]f it is *plausible* that

Congress intended the result compelled by the Plain Meaning Rule, we must reject an

assertion that such an application is absurd.'" *Id.* (citing *Sigmon Coal Co. v. Apfel,* 226

F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.,* 534 U.S.

438, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (emphasis added)).

First, we note that applying the hanging paragraph to surrender cases produces

the same result as applying it to cases where the debtor retains the collateral; the claim

is treated as fully secured.[15]  Therefore, applying the plain language does not create

any conflict within the statute itself.  It also does not render any other provision of §

---

[15] One court noted that such treatment is a fiction no matter whom it benefits, "but it is a fiction that is imposed by the plain meaning of the Hanging Paragraph." *In re Pinti*, 2007 Bankr. Lexis 744, at *17. The *Pinti* court goes on to explain that the law is no stranger to fiction, citing several examples.  *Id.* at *17-*18.

1325 inoperative and is not at odds with any neighboring statutes (as stated above it

works in conjunction with § 1322(b)(2)).

While the Creditors do not address this specific exception, they do argue that the

application of the hanging paragraph produces anomalous results, which argument is

tantamount to stating that it triggers the "absurdity exception." Specifically, they argue

that if a 910-creditor obtains relief from the automatic stay immediately after the debtor

files his bankruptcy petition, repossesses the collateral and disposes of it prior to plan

confirmation then that creditor is entitled to an unsecured deficiency claim. However,

the 910-creditor who does not react so quickly may be forced to accept the surrender

of the collateral in full satisfaction of the claim. This argument is fundamentally flawed,

though; it operates on the assumption that surrender must be voluntary, which is not

necessarily true. *Black's Law Dictionary* defines surrender as "[t]o relinquish, to deliver

into lawful custody, or to give up completely in favor of another." *Black's Law Dictionary*

1444 (6th ed. 1990). Nothing in the definition requires the act to be voluntary. In the

Creditors' example, the repossession of the collateral could be treated as surrender.[16]

Additionally, the court in *In re Turkowitch* specifically addressed the argument

advanced by the Creditors and found that "there is nothing unfair about denying the

910-creditor a deficiency claim that will dilute the distribution to other creditors or

increase the debtor's obligations under a plan. *In re Turkowitch*, 355 B.R. at 127.

---

[16] *See In re Pinti*, 2007 Bankr. Lexis 744, at *4-*6, fn.6 *11 (While that court specifically refrained from deciding whether a repossession was the equivalent of surrender, it noted that the parties agreed that it was a surrender.)

The Creditors also argue that under the Debtors' reading of the hanging paragraph that it would be possible for a debtor to surrender a vehicle that has been declared a total loss in an accident in full satisfaction of the secured claim.  Of course, any plan that attempted such a feat would not need to trigger the absurdity exception because it could not be confirmed on the good faith requirement.  *See Id.* at 127, n.3.

Another example of anomalous results in the application of the hanging paragraph is one that the Creditors did not raise, but that actually has a bit more bite to it.  Applying the hanging paragraph to surrender claims means that creditors with claims older than 910 days are entitled to unsecured deficiency claims after the sale of the collateral, but that creditors within the 910-day period are not.  While this argument, at first blush, appears to win the day for the Creditors, this Court can think of two reasons why such a result could have plausibly been intended by Congress.

First, cars purchased within the 910 days before bankruptcy are more likely to be newer cars with a higher value than ones purchased more than two and a half years before filing.  Allowing debtors to surrender these "910 vehicles" in full satisfaction means the creditor obtains the more valuable vehicle without incurring any repossession expenses and before it depreciates further.  The creditor is then able to resell the vehicle and begin making money off of the collateral again.  The creditor avoids the risk of further depreciation and risk of further non-payment by the debtor. *See In re Turkowitch*, 355 B.R. at 127 ("Moreover,...this [c]ourt can envision that the denial of this deficiency claim is exactly what was envisioned by the drafters, in order to encourage debtors to either pay the full amount of the creditor's claim to retain the

vehicle or to immediately surrender the vehicle to the creditor before any further depreciation could occur.")

Now, it is entirely possible that a creditor might sell an older vehicle, such as a 2002 model to a debtor in 2007, especially in the sub-prime market, in which case the previous argument is invalid, but does lead to the second reason that Congress could have written the hanging paragraph as it did.  BAPCPA purports to be a consumer protection act.  As such, perhaps Congress meant to spread the risk between the debtor and creditor when lending on collateral, the value of which is somewhat compromised because of age.  Allowing debtors to surrender the collateral in full satisfaction of the claim might help to ensure that sub-prime creditors are not taking advantage of debtors by charging them more than the market will actually support.

Consequently, we find that a plain language reading of the hanging paragraph does not meet the second exception to the plain meaning rule, as it does not produce an absurd result, and should be applied by the Court according to its terms.  As a result, it is unnecessary for the Court to examine Congress' intent as to the inclusion of the hanging paragraph in § 1325(a) as urged by the Creditors.  Congress chose its words for the hanging paragraph, which are clearly written and easily understood, and it "is assumed to know and understand the effect of its legislation." *In re Turkowitch*, 355 B.R. at 127 (quoting *In re Payne*, 347 B.R. at 283).  This Court's role is merely to enforce the statute as written.

While the plain meaning rule settles this issue, the Court would like to address the creditor's remaining arguments. As we do, we look to the analysis in *In re Pinti*, 2007 Bankr. Lexis 744, in which Judge Morris artfully addressed them all.

D.  Creditors' Alternative Arguments

1.  Creditors' Argument that the Deficiency is Allowed under State Law Alone

The creditors argue that the addition of the hanging paragraph did not change the way deficiency claims are handled as state law determined the deficiency amount pre-BAPCPA and continues to do so post-BAPCPA.  The Creditors rely on the analysis in *In re Patricka* and *In re Zehrung* in making this argument.  *In re Patricka*, 355 B.R. at 625-26 ("Prior to BAPCPA, § 506 did not bifurcate a secured creditor's claim upon surrender, nor does it do so post-BAPCPA."), *In re Zehrung*, 351 B.R. at 677-78. ("[W]hen collateral is surrendered pursuant to § 1325(a)(5)(C) the amount of the remaining unsecured claim is determined by state law, uniform commercial code sections 9-610 to 9-624....The creditor's rights being unmodified by § 506, it is entitled to its state law right to liquidate the collateral and retain an unsecured claim for the balance due."(citations omitted)).  This argument ignores a most significant fact, that while "'nonbankruptcy law determines whether a claim is secured[, it is] bankruptcy law [that] determines the value of the secured claim.'"  *In re Ellegood*, 2007 Bankr. Lexis 578, at *3 (quoting *In re Green*, 348 B.R. 601, 603 (Bankr. M.D. Ga. 2006)), *In re Pinti*, 2007 Bankr. Lexis 744, at *24 ("'State law may control the requirements for creating and perfecting a lien, but it is the purview of the Bankruptcy Code to both recognize the lien and provide for its treatment.'" (citation omitted)).  Section 506 is the mechanism

for determining such value and Congress is within its right to remove certain claims,

such as 910 claims, from its purview.  It is important to remember that state law only

controls in bankruptcy when it has not been modified by the Bankruptcy Code.  *In re*

*Brooks*, 344 B.R. 417, 422 (Bankr. E.D.N.C. 2006).  In the instant case, remedies

available under state law would be utilized to liquidate the collateral and then the

amount obtained subtracted from the contract amount due to obtain a deficiency

amount, but for the valuation process provided for in § 506.  Congress is within its

rights to prohibit the bifurcation of claims in bankruptcy typically allowed for in § 506 as

it sees fit.

2.  Creditors' Argument that Section 506 Is Not Definitional

Similar to the above argument, the creditors cite *Dewsnup v. Timm*, 502 U.S.

410 (1992) for the proposition that § 506 is not a definitional provision and thus cannot

be used to determine what part of their claims are secured versus unsecured.  This

reliance is misplaced.  *Dewsnup* held that the debtor could not strip down a lien on real

property pursuant to § 506(d) because the lien was fully allowed under § 502.

*Dewsnup*, 502 U.S. at 417.  In so finding, the Court simply said that there was enough

ambiguity between §§ 506(a) and (d) that it could not find that Congress meant for the

term "allowed secured claim" to mean the same thing in both sections.  *Id*.  Further,

the Court restricted its findings in *Dewsnup* to the facts before it.  *In re Pinti*, 2007

Bankr. Lexis 744, at * 29 (citing *Dewsup*, 502 U.S. at 416-17 ("Hypothetical

applications that come to mind and those advanced at oral argument illustrate the

difficulty of interpreting the statute in a single opinion that would apply in all possible

fact situations.  We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.").

Secondly, that argument does not bear fruit given that § 506 is entitled "Determination of Secured Status," *see In re Pinti*, 2007 Bankr. Lexis 744, at * 29, 11 U.S.C. § 506, and other holdings of the Supreme Court decision, *see Rash*, 520 U.S. 953, 956-57, 117 S. Ct. 1879, 1882-83, *Ron Pair*, 489 U.S. at 238-39, 109 S. Ct. at 1029.  The Court found in *Rash*, a case decided after *Dewsnup*, "that Section 506 'tells us that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral....To separate the secured from the unsecured portion of a claim, a court must compare the creditor's claim to the value of "such property," *i.e.,* the collateral.'" *Rash*, 520 U.S. at 961 (citations omitted).  *Rash* also states that "[t]he value of the allowed secured claim is governed by § 506(a)." *Id.* at 956-57.  Further, the Court in *Ron Pair* stated that "[s]ection 506, enacted as part of the extensive 1978 revision of the bankruptcy law, governs the *definition* and treatment of secured claims, *i.e.,* claims by creditors against the estate that are secured by a lien on property in which the estate has an interest." *Ron Pair*, 489 U.S. at 238-39, 109 S. Ct. at 1029 (emphasis added). We find that given the language of both of these decisions, the Supreme Court has declared § 506 to define the value of allowed secured claims rather than defining "allowed secured claim" as a term of art; therefore this argument must fail.

3. <u>Creditors' Argument that Surrender Erases the Bankruptcy Estate's Interests in the</u>

<u>Vehicles</u>

Section 506 is used to value allowed secured claims "in which the estate has an

interest." 11 U.S.C. § 506. The Creditors argue that once the collateral securing the

claims is surrendered the bankruptcy estate no longer has an interest in the property,

which is necessary to apply § 506 for valuation purposes.   They argue that it naturally

follows that the hanging paragraph therefore cannot apply to surrender situations and

that in order to determine a deficiency claim state law must be used. *See In re*

*Morales*, 2007 Bankr. Lexis 97, at *13-*14, *In re Patricka*, 2006 Bankr. Lexis 3160, at

*8.

This argument also fails as it violates both bankruptcy and state law. *See In re*

*Pinti*, 2007 Bankr. Lexis 744, at *33, Va. Code Ann. §8.9A-623. Judge Morris in *In re*

*Pinti* noted that not only is "'there [] nothing in the Bankruptcy Code which indicates

that a debtor's (or estate's) interest in property terminates immediately upon surrender

of the property to the creditor,'" *In re Pinti*, 2007 Bankr. Lexis 744, at *33 (quoting *In*

*re Quick*, 2007 Bankr. Lexis 219, 2007 WL 269808, at *5 (Bankr. N.D. Okla. Jan. 26,

2007), but also that surrendered property is specifically not included in § 541(b), which

lists the nine categories of property that are not part of the bankruptcy estate. *Id.* at

*34-*35.

Additionally, the argument contradicts Virginia state law, which allows debtors

the right of redemption of property until the creditor has disposed of the collateral. Va.

Code Ann. § 8.9A-623, *see also Tidewater Fin. Co. v. Moffett (In re Moffett)*, 288 B.R.

721 (Bankr. E.D. Va. 2002), *aff'd.*, 289 B.R.55 (E.D. Va. 2003), *aff'd.*, 356 F.3d 518 (4th

Cir. 2004) (holding that the filing of bankruptcy does not extinguish a debtor's equitable

interest in a car or the right to redeem the car within a reasonable time).

Further, the debtor and the estate would have an interest in any surplus

proceeds the creditor may collect from the disposition of the vehicle, as other creditors

or the debtor would be entitled to receive them. *See In re Pinti*, 2007 Bankr. Lexis

744, at *33.

4.  <u>Creditors' Argument that the Plan Provides for Disparate Treatment of Certain</u>

<u>Unsecured Creditor's Claims in Violation of § 1322(b)(3)</u>

The Creditors argue that they have a deficiency claims against the Debtors

resulting from the sales of under-secured vehicles, which is properly classified as a

general unsecured claim.  It is their contention that by receiving a 0% distribution on

these unsecured claims while other unsecured claims in the same class are receiving at

least some distribution, that the debtors' plans are *per se* not confirmable pursuant to §

1322(b)(3).  That section states that a plan must "provide the same treatment for each

claim within a particular class." 11 U.S.C. § 1322(b)(3).

The obvious problem with this argument is that it puts the proverbial cart before

the horse.  It begins with the assumption that the creditors have an unsecured claim

and proceeds from there, rather than providing a rationale for allowing the claim.  As

stated above, the surrender of the vehicles fully satisfies the lien, which means that the

creditors do not, in fact, have an unsecured claim at all.

5.  <u>Windfall to the Debtors</u>

Finally, the Creditors argue that by allowing the Debtors to surrender their

vehicles in full satisfaction of their claims that the Debtors will be receiving a windfall

benefit based on "the happenstance of bankruptcy," which is discouraged. *Butner*, U.S.

at 55, 99 S. Ct. at 918.  The Court does not find this argument persuasive and easily

dismisses it because "'any benefit would inure largely to the unsecured creditors.'"  *In*

*re Pinti*, 2007 Bankr. Lexis 744, at 47 (quoting *In re Robert Earl Brown*, 346 B.R. 868,

875 (Bankr. N.D. Fla. 2006).

## CONCLUSION

For the foregoing reasons, the Court makes the following findings of law and

fact:

1.      The hanging paragraph found at the end of § 1325(a) is unambiguous
        and must be interpreted according to its plain language;

2.      A plain language reading of the hanging paragraph is not at odds with
        the intent of the drafters;

3.      A plain language reading of the hanging paragraph does not produce
        an absurd result;

4.      Tidewater Finance Company's Objection to Jennifer Kenney's Chapter
        13 Plan is hereby **OVERRULED**;

5.      Hyundai Motor Finance Company's Objection to David Byrum's Chapter
        13 Plan is hereby **OVERRULED**.

**IT IS SO ORDERED.**
Norfolk, Virginia

_____
David H. Adams, Judge
United States Bankruptcy Court


Copies to:

     James Sheeran, Esq.

     John Bollinger, Esq.

     Patrick McKenna, Esq.

     Tom Smith, Jr., Esq.

     Frank J. Santoro, Trustee